The next case for argument is 24-1658 United Therapeutics Corporation v. Liquidia. The next case is 24-1658 United Therapeutics Corporation v. Liquidia. Good morning. May it please the court. I'm Doug Carson on behalf of United Therapeutics. I'd like to start with three points that I think are significant. Before you do that, and I will let you do that, and this isn't going to take too much time, but you started this. You gave us a 28-J letter at the end of last week about the FDA.  I mean, maybe I missed something, but I had been assuming all along, based on your request for a stay and the arguments of irreparable harm and so forth, that the district court's vacating of the injunction was having some immediate effect on what happened with the FDA, etc. I don't know, I don't understand the details of this, but the suggestion is, I guess, that that wasn't a correct assumption. So can you just tell me what's going on with the FDA? Absolutely. As your honors are aware from the Hatch-Waxman line of cases, there's a whole bunch of exclusivity wrinkles that go on. Some are patent and some are regulatory. In this circumstance, the FDA, very recently, shortly before the issuance of the Rule 28-J letter, indicated that they had provided a new exclusivity to MyClient United Therapeutics product, which, if taken, would preclude final approval to Liquidia's product until May of 2025. And what effect, if any, does the vacating of the injunction have? Or are they operating because we haven't yet affirmed or reversed that? Are they waiting for us? I mean, what does the FDA do, then, if, let's assume, we affirm the injunction? We affirm vacating the injunction. Does that automatically change this, or is this kind of a separate thing going on? This is a separate thing going on. I would note, though, your honor, so the vacating of the injunction would independently prevent the FDA, I'm sorry, restoring the E4A order would prevent the FDA from approving, finally, the Liquidia product up until either the patent goes away, i.e. it's canceled, or the patent expires, which would be 2027. This separate act by the FDA is a separate act of exclusivity, and it maintains that Liquidia's product could not be approved until May of 2025. So it is separate and distinct. The terms of these potential exclusivities are different, however, your honor. And I would note that Liquidia did sue the FDA over that exclusivity, claiming that it was wrongly submitted. And the District of Columbia District Court has issued a scheduling order on an expedited summary judgment basis where that will be heard in December, I believe December 5th of this year. Mr. Counsel, just so I make sure I understand correctly, even if we affirm the District Court, you're saying Liquidia cannot get on the market with this product before May 2025? Unless something happens with the District of Columbia, where in December it decides that the exclusivity was improvidently granted by FDA. So there is an option for- You mentioned, though, I was a little confused by a statement again. I don't want to, I promise this will be my last question. You mentioned, what if the, what if we affirm and the PTO cancels? Does that affect the FDA? Does the FDA then, does that change its conduct with respect to our case and this other exclusivity, this other thing? The cancellation of the patent would have no effect on the other regulatory exclusivity that the FDA has issued and what Liquidia is fighting about in terms of the District of Columbia. They are two separate pathways, Judge. All right. Why don't we restart the clock and we'll let your friend know if he has anything to say about that. We'd like to hear that and then we will- Sure. So why don't we restart the clock. All right. Back to your three points. Well, thank you and may it please the court. I'd like to start with three points here. First, the 793 patent is in force today. It is not expired. It is not canceled. It was infringed, affirmed infringed, and a mandate was tendered by this court back to the district court. We have rights in that patent today. An E4A order, it requires an unexpired patent that has been adjudicated, infringed by a district court. We have that standing here today. What if in the meantime, there's been a passage of time here, some other generic comes in and prevails before the district court in an invalidity case? Are you saying that the E4 still would preclude anything being done until the expiration of the patent? Well, certainly that's not the case that we have before us. I wouldn't ask the question.  But the statutes and regulations from Hatch-Waxman treat district court invalidity different than they do unpatentability files. So is the answer yes? The E4A would not be construed to override or somehow supersede a finding in another case with another generic that the patent was invalid. I'd want to look to make sure, but I believe under X, Y, and Fresenius, it ought not have any effect because of the finality of the final judgment below in the earlier case, assuming there's no co-pendency of those cases. However, there is a Hatch-Waxman statute, 21 U.S.C. 355, which provides that upon affirmance of a district court invalidity or a decision of invalidity by district court, that has immediate effect that day. In other words, it's correct that if another generic came in and got a judgment, maybe a firm by us mandate issued, that the patent was invalid, then they would have the right to go on. So all of them have these rights, but Laquitia doesn't. I believe that's the case. I'd want to look at the Hatch-Waxman Act to see if it specifies about whether that could impact a separate case or only the case in which. E-4 and the importance of saying that it only expires at expiration applies only to a generic who has come in and not prevailed in his particular case of invalidity before the district court. Well, I think, again, we're now talking about a situation where we have a final judgment from the original matter. I think the E-4A order could be subject to a Rule 60B attack under 60B-4 in the case that Your Honor is hypothesizing. And that is that the underlying basis for the injunction no longer exists, i.e., you have a patent. While it's not expired, the patent no longer exists that would support the continuance of the E-4A order. And the same would be true in your view if the PTO yesterday or today or tomorrow, I don't know if you have checked. I'm assuming they haven't canceled it yet. No, they have not. In fact, this is up on appeal, well, cert petition to the Supreme Court. And one justice has asked for a response from Laquitia. Right, I know. It's on conference for September 30th. It should be. We may have a decision as early as October. Right. And so this is not speculative. There may, in fact, be not ever a cancellation of the 793. Well, how do you know except for the fact that you cite Return Mail and In re Tam and what went down there with respect to the PTO and the registration and the cancellation? Do we know? I mean, is it on the PTO website what they do? Do we know that they are holding this cancellation for Supreme Court review? We don't for sure. We don't know. We don't know for sure. However, the indications from Return Mail and from the trademark case that we cite in our appendix, which uses the exact same language, are highly suggestive that the patent office will not cancel a claim before the expiration of Supreme Court review. And that's, I think, the Return Mail makes sense. Well, I'm not sure I get exactly that from the submissions in the appendix. Because in the Return Mail case, they did issue the cancellation. And then they were told that, wait, the Supreme Court has granted review. And they said, in light of that order, the decision to grant cert, not the decision to file for cert, but the decision to grant cert, someone called a patent review quality assurance specialist vacated the certificate. You're correct, Judge Prost. We read that, however, as a broader general policy that the patent office will wait until there's finality of every appeal. We take an order from before a patent review quality assurance specialist is saying, this is the way that we proceed. They didn't proceed that way in this case. So they said, OK, we've got to change it in this case. Because there's an order granting cert. And you're saying we should read that as a patent office policy, that they don't issue the certificate until as long as you file for cert? I don't know. Well, insofar as the cert petition is pending. And if cert is granted, then Return Mail absolutely applies on its face, where cancellation would be inappropriate. Counsel, how is it equitable to keep Laquitia as the only entity precluded from practicing the subject matter covered by the 793 patent claims? Well, Your Honor, I don't believe that they are uniquely situated. As I started at the outset, the 793 patent exists today with enforceable rights. Under E-Plus and the Bingo case, we could, in theory, assert this patent, the 793 patent, against a generic filer subject to Rule 11 and subject to 35 U.S.C. 285 fee issues. You would be able to get over the Rule 11 hurdle of asserting the 793 patent as it stands now in light of the PTO's decision? Well, that issue has not mercifully been presented to the client. And I can't speak for what the client would want to do in that circumstance. But under- Pretend you're czar. Just for my purposes, my hypothetical, pretend you're czar. Your clients always agree with whatever you say. I know this is not necessarily the case. Would you feel comfortable asserting the 793 patent claims as it stands now against another party? My preference would be probably not to assert it. And in fact, Your Honor, because of the XY co-pendency requirement, remember, they had a separate, another indication, Liquidia did, that was pending. When the PTO written decision came down and the affirmance by the court, in that co-pending case, we removed without prejudice the 793 out of deference to this court's jurisprudence in XY and Fresenius. And so it's a different issue if we're looking at something that would have a new complaint filing against a new party. And in that case, my recommendation, I suspect, all things being equal, would be we probably ought not proceed. However, the issue that the final written decision grappled with was 103, which was withheld strategically from the Hatch-Waxman case. And so essentially, what Judge Andrews did here in amending the E4A order to take that away, he gave Liquidia a separate off-ramp, but while still maintaining all the advantages of the Hatch-Waxman Act. And that's a balance that only Congress could make. And Congress did not do that when they adopted the AIA. The Hatch-Waxman Act, with its carefully balanced generic versus brand, Congress chose not to give an off-ramp. Let me just move on a little bit. Go ahead. On the cancellation and the effect of the cancellation, so if the Supreme Court denies cert on October 5th, that doesn't change your position, right? Because you still need cancellation. Right. Under this court's case law, the cancellation is what expires the rights. And so we would wait for the cancellation. Does it matter the cancellation is a ministerial event or task? I don't believe so. You agree it's ministerial? Well, standing here today, I can't think of some discretionary act that might have to happen or some way in which cancellation wouldn't follow. So in that sense, yes, I agree it might be ministerial. But ministerial acts are very important across the board. Ministerial doesn't mean they're not important. Well, I don't know what important means. But it is a ministerial act. So you're saying that it's not the final judgment of this court in which a mandate is issued, that somehow cancellation, a nondiscretionary ministerial act, trumps or precludes that from having effect. It's the case. Let's say the PTO loses a document and it doesn't issue a cancellation for a year. I mean, what does cancellation do if it's a ministerial act in which there's no discretion? Well, Congress said in Section 318B, cancellation is what extinguishes the rights. That's the law of this court. Now, had Laquitia actually pursued its argument before district court, it would never be in this circumstance. This is exactly the off-ramp that they're looking for by virtue of not having to face a clear and convincing evidence standard. Yeah, but you suggest that some of this stuff is nefarious. This is the world we live in. And there's nothing nefarious. And I'm sure you, for your clients, take full advantage up front in a respectable way and use all of the vehicles. So, I mean, you've made a few suggestions here as if there's something sinister and nefarious in terms of the way things have proceeded here. This is the world we live in. Your Honor, I am not saying anything nefarious has happened. That's the system that's been upheld by the Supreme Court. So you're saying that the invalidity decision and the unpatentability decision, unpatentability only has any meaningful effect when the thing is canceled. That's exactly right. And that's this court's E-plus case, Your Honor, and the In Re Bingo case, and the Fresenius case. Well, they were never confronted with the issue of whether it's a difference between cancellation or final verdict. Well, In Re Bingo, I know it's non-presidential, but it's a judge-ish decision. It actually did address the question of cancellation. Until cancellation, subject matter in the patent still exists. So I disagree with that characterization. And with respect to, yeah, I certainly don't mean to be throwing any stones with respect to the way in which Laquitia has litigated this case. But those are strategic decisions. And under Ackerman, a party's strategic decisions and the place where they find themselves in is something to be considered in terms of equity, which Judge Cunningham's question had to do with. Well, let's speak of equity. Let's go back to maybe her point. So I'll let her. Yeah, I have one other question before we switch to where Judge Post wants to go. Is there any pertinent legislative history that supports drawing a distinction between invalidity and unpatentability in this case? I didn't see anything specific in the legislative history aside from the actual statutory language that was approved. So 318B talks about unpatentability and how the effect is cancellation. Whereas 21 U.S.C. 355, alphabet soup, says when the federal circuit finds invalidity off of a district court appeal, that has immediate effect that very day. And so Congress presumably was aware of these statutes. Remember, these are two different balances, one specific to brands and generics and the other for all members of the public and patent owners. And there was a choice made in that statutory language such that if you decide to go IPR route, you are on your own and you have to wait for cancellation. This is the law. Whereas if you go hatch-waxman, you have the opportunity to take advantage of if there's an affirmance or a finding of invalidity by this court, that day, that's operative. And that was known and understood. I'm well into my time. I apologize. Well, this is our time, not your time. We've been very generous with you. I'm happy to talk as long as you'd like to. All right. What about the authority? I mean, leaving aside the basis for what the district court said about issue preclusion, what about just a regular 60B-5? The Supreme Court has been very generous, most recently in Starbucks, in terms of saying the equitable authority and discretion the district court has. This is a circumstance of changed circumstances. There's certainly changed circumstances. You and I might disagree about the effect of that. Why is this not within the broad equitable authority of the district court, even absent cancellation, given that the final judgment, a mandate is issued in our case? There's been no stay of the mandate. The district court waited until that. I don't know intentionally or unintentionally, but that's the way it turned out. Why is that not sufficient for an affirmance? Well, Your Honor, I think I would respectfully submit that there is one and only one remedy that applies to all of Hatch-Waxman, and it is regulated and mandated by Congress in E-4A. It is that order. And that order submits that if the patent is unexpired and the patent has been infringed, that that is the test for whether the E-4A order ought to be maintained. I would submit that there really is very little, if any, equitable discretion in a district court in the context of this statutory, congressionally mandated remedy. Now, if there were a cancellation order- I mean, the court has cases, not our court, the Supreme Court, which talks about shall, and even the word shall being overridden by this necessary, important, equitable discretion allowed to the district court. Why is that not applied in this circumstance? Well, because this is a situation where Congress actually balanced the interests of branded and generic companies and made exactly this determination, that this is the remedy. Now, separately, I don't believe- But we're talking about cancellation, a ministerial act, which is completely non-discretionary. So the issue here is the difference between our final judgment, mandate having issued, and the impact of that, whether that can have any impact in establishing a changed circumstance without before the cancellation, i.e., a ministerial act, which is non-discretionary. That's the issue, right? Am I fairly stating it? I would submit that the- Well, yes, I think I'll agree with that. However, I would say that when we're thinking about equity, you need to actually look at the equity. And Judge Andrews' decision does not provide any information about balancing any equity here. So even though the liquidity had moved under 60B-5 and 6, Judge Andrews, the district court here, did not balance any equities. Acknowledging that he would have had authority to do that if he had made it- I mean, we review for abuse of discretion. If he had established, or at least under an abuse of discretion standard, that there were equitable principles that need to be applied here. I would submit that the district court has no discretion under 60B-5 or 60B-6. I think under 60B-4, which is the injunction is now void, that would be the mechanism, once the patent is canceled, to go to Judge Andrews or a district court judge. Because the operative- that is the only change circumstances. Either the patent is expired, or the patent that supports the infringement finding is now gone away. And that's 60B-4 in my view, Judge. Thank you. Thank you so much for your time. Thank you. We'll restore rebuttal time. Now, before we start the clock running, I'll give you the same question as I gave your friend at the beginning about this 20HA letter, which was very confusing to us in the context of what we're doing here. Yes. Did you have anything to add to what he said? Yes. Good morning, Your Honors. I'm May Piz Court's Sonia Sukjong from Laquitia. We do agree that the FDA issue is completely independent of what's going on here. Excuse me for a moment. The regulatory exclusivity granted by the FDA a few weeks ago prevents Laquitia from launching until May of 2025, independent of any- But that's regardless, right? Independent of any patent issue that we have facing here. The patent issue that we're facing here is if we believe the court should affirm the district court's Rule 60 decision. If you do, then Laquitia is still prevented from launching until May of 2025, unless and until that FDA decision is reversed by the District Court of D.C. So we believe the letter was not necessary because it doesn't change anything that you need to decide with respect to this issue. I thought that at one point we were asked to expedite this case potentially. Yes. Is that still a current expedite as well in light of this FDA letter or does that have no impact? Do you understand what I'm asking you? I do understand. I believe I understand. UTC had asked to expedite this issue because the injunction was then lifted based on the 793. At that point in time, the FDA could have granted final approval to Laquitia. The problem was that UTC, before that Rule 60 issue came down, sued the FDA to prevent final approval, even though the FDA had not made a final administrative action and that case was ultimately withdrawn by UTC, recognizing there was no final agency action and their PI motion was denied because there was no PI administrative action. But because of that filing of UTC to the FDA, the FDA then delayed consideration of final approval of Laquitia's new drug application, or not a generic, a new drug application for Utrepia. The FDA was then required by the D.C. District Court to provide both sides and the court with three days' notice before it would issue any decision. And the court did that in early August, said they were going to issue a decision, and then the FDA reversed itself. It had previously determined that UTC does not get this extra exclusivity. It reversed itself and imposed another exclusivity that prevents now Laquitia from printing. I hate to be a pedestrian, but all I care about is the impact of this case. So the bottom line, following up on Judge Cunningham's, is that even though we obviously try to decide cases as quickly as we can, there's not an extra need in this case because what we do here, whether we affirm or reverse, is not going to have an immediate impact on who's on the market and who's not. Correct. And what about in the interim with this case pending? Do we have to keep watching over our shoulders to see what happens? When do you expect stuff that might happen in the companion, in the other case, that might have an impact on what we do? So I can't tell you timing definitively, but as Your Honor acknowledged with counsel, the cert petition will be brought up to the Supreme Court this month. No, we know about our case. I was talking about the other case. Oh, you don't need to keep looking over your shoulder. If you affirm this, the way it stands now, if you affirm and May shows up, we get final FDA approval. If the FDA's decision gets reversed prior to that by some summary judgment motion, we get final FDA approval. What's the next hearing or date in the district court action? Which district court, Your Honor? There's the... D.C. The next hearing date, I believe, is December 5th. So let me ask you this. The Supreme Court's going to hear this in conference. Let's assume they deny cert. Correct. And the solicitor, or not the solicitor, the PTO promptly cancels the patent within two weeks.  Why do we have to go through any of this here? You don't. It's moot. And we did not ask to expedite this issue. We actually noted in opposing the expedition motion that because the Supreme Court could deny cert back when it was filed or now coming up in October, this issue is rendered moot. It's in our appeal brief. Admittedly, it's in a footnote because we're going to spend a lot of time on it. And there's no... I mean, in theory, in this particular case, there could be damages, but there's no damage. You're not on the market. We're not on the market. So there's nothing to go back for an assessment by the district court. And you took my thunder, Your Honor, but my opening line was you don't need to decide this right now. You can wait until at least the Supreme Court... Do you have any expectation that the PTO will promptly cancel this after assuming cert is denied, after cert is denied? Or might they take six months, in which case this issue would be relevant because it might run you past that May date, which you might get changed anyway. We believe, Your Honor... Once the Supreme Court denies the petition, we are in contact with the Patent Office, and we will certainly reach out to the Patent Office, the PTAB, and say this should be canceled. But independent of that... So let me just follow up. December, you said the hearing in D.C. is in December. Yes. So we at least know that you're not getting that May date changed before December. Correct. And so we'll know early October whether the Supreme Court is going to hear it or not. Correct. So there is a two-month time between that and this December date for the Patent Office to cancel, which would moot this case. Correct. We believe the case is mooted. We believe there's no basis for this... Okay, I think we're going to start the clock because this is really... We're getting into the marathon. I don't want to take... Yeah, I know, I know. We're starting the clock, and we're not going to be that generous anymore. Not on you, but on us. Yes. I should have started the clock five minutes ago. So, go ahead. Thank you, Your Honor. We believe the district court decision should be affirmed. The affirmance of the PTAB 793 final written decision by this court rendered final the invalidity of the 793 patent, and that's language from this court's precedent in X, Y. Yeah, I know, but you have got to acknowledge that reliance on X, Y and invalidity is something different. The consequences of the difference may be a matter of dispute, but this is unpatentability, and X, Y was an invalidity case. That's a perfect... That's... We've not... That holding doesn't have as much power as some might think, including maybe Judge Andrews. I believe that's incorrect with respect to X, Y. What X, Y was, was you had a district court case, and you had a pending IPR decision, and the appeals were held, the appeals were heard simultaneously. No, I understand, but I don't want to spend 10 minutes having this debate. Okay. But it is different, in my view at least, not speaking for the panel, if you have a pending case. We do that all the time. We decide one issue on an IPR or on a district court, and then we issue a same opinion the same day, usually non-PRAC, and saying this one is governed by that one. That's kind of an internal thing that we do. I think this is different. So if it's... Except that I think this is different. Okay. So what does 60B-5 get you? What does the district court... Isn't there a prudential mootness or some principles of equity and power of the district court to do this based on changed circumstances? And we agree, Your Honor, and that's exactly what 60B-5 says. If there's a change in circumstance that the injunction is no longer equitable, it should be lifted. E-plus, Mendenhall, a Supreme Court precedent, and that's what we believe the court did here under two reasons. One, yes, the court did rely on XY, but second, and this is appendix page 4 and 5, it spans pages 4 and 5, the district court also found that because of this court's affirmance of the PTAB decision, the 793 patent is invalid, and therefore an injunction cannot be had on an invalid patent. So whether you look at the timing perspective of XY, and I respectfully disagree, and I won't change your opinion on that, but with respect to the equitable issues, liquidity is now in a position to be the only party that cannot launch a product based solely on the 793 patent. Counsel, I'm sorry, go ahead. And you know I already explored some of the opposing counsel that potential lack of equity, but I do agree with Judge Prost that I feel like in your briefing you were a bit fast and loose with the terminology invalidity and unpatentability and used those terms inaccurately at times, is the way I would phrase it. What would you contend are the only material differences between unpatentability and invalidity that would impact this case, if at all? None. The only difference is that one's a PTAB and one's a district court. And one statutorily requires cancellation. Cancellation, as your Honor pointed out, is a ministerial act. I know you disagree with XY, but to answer Judge Cunningham's questions about how we've used the language invalidity and unpatentability, I do want to address that. In XY, and I'll quote it, in XY, and this is page 1294 to 1295 of the XY decision, when looking at the IPR decision, this court said that affirming the IPR decision renders final a judgment on the invalidity of the asserted patents. Remember, in the district court case, the court did not affirm an invalidity of the district court case. It rendered final an invalidity or unpatentability of an IPR decision. And that's why there is no distinction between the term invalidity and unpatentability for Rule 60 purposes. The case that UTC cites in its reply brief is In Re Cyclobenzaprine. That case, they cite footnote 7, that talked about the difference between invalidity from a district court and patent prosecution unpatentability. Because in that situation, there's no issued patent yet. In the In Re Dingo case, again, in that case, it was a re-exam. And the only thing that happened in that re-exam was that the examiner confirmed a rejection of one of the attacked claims. That case was on appeal to the board. It didn't even reach to where we were here. And in that situation- You would at least agree with us, though, that there's a different burden of proof with respect to unpatentability versus invalidity, different forms. I do agree with those basics. Absolutely. But those differences are not meaningful here because through an IPR decision, you can go to the PTAB under a different burden of proof. But you still have to get it affirmed here. And once it's affirmed here, and that's the situation that we're talking about, we're not relying on the PTAB decision by itself. And Judge Andrews did not rely on the PTAB decision by itself. It was affirmed by this court. And there's not a single case that UTC sites or we can find that an injunction was maintained, equitable or otherwise. Well, it's affirmed here. You're not talking about just the decision, the mandate issues. Correct. That's what we key for the mandate issue. Yes. And the other side has the ability to ask for a stay of the mandate. And I don't even know a stay wasn't granted. I don't know whether- I don't think they filed one. Can I go back to the mootness thing? Isn't this an example of it's moot, but it's capable of repetition and evading review? I mean, wouldn't there be- I'm certainly going to ask your friend, because this is his appeal. But isn't there a basis for not mooting this case out, notwithstanding what all is going on elsewhere? I think it would be very rare, Your Honor, because usually in IPRs and district court case co-pending at the same time, if the IPR is instituted, most district courts in the country do stay the district court action until the IPR is filed. The problem that we had here is that there's a 30-month stay. Had Laquitia moved to stay the district court, UTC certainly would have filed a motion to extend the 30-month stay until that issue was decided. So I think, Your Honor, it is moot and probably can only come up in this type of situation, which may deal with Hatch-Waxman. And in our understanding, this is the first time this type of issue has come up. Because usually once the decision is affirmed and the mandate issues from an IPR, no party asks to maintain an injunction. Because there is no patent that can be had that would equitably allow UTC to maintain their injunction. And your position is that cancellation doesn't matter because it's trumped by the fact that this is just a ministerial act? Correct. So it has no legal consequence. You didn't cite Arthrex. I mean, Arthrex does say it's ministerial. We cited, I forget the name of the case, I believe it was Judge Hughes. Yeah, it was a Yonkou case. Actually, that was a little different. Arthrex is, I think, more at site. But we do believe it is a ministerial act. We cited cases here. We cited cases before the district court. And I believe Judge Hughes mentioned this, I know, asking to me, but asking to counsel as well, that we are at the mercy, if the injunction is not lifted and not affirmed, Laquitia is at the mercy of the Patent Office and UTC will claim that their injunction could last forever until the Patent Office administratively cancels those claims. That cannot be right. And we are at that situation right now because there is no reason why, and we don't know why, the PTO director has not. Well, if that's what the statute requires, then you are at the mercy of the PTO and you have other remedies, such as perhaps a mandamus petition, ordering them to cancel it if they have a duty to do it and don't. But we don't believe the statute, and if you're referring to the Hatch-Waxman statute requires that, because the Hatch-Waxman statute doesn't say claim cancellation. And Judge Andrews aptly pointed out, and counsel didn't address this, but the Hatch-Waxman statute requires a patent to be infringed. There is no 793 patent to be infringed. How do we know that? Counsel begrudgingly conceded upon examination that they would not assert this patent against another generic. They in fact withdrew their complaint. It's a completely separate action they filed against us in the 793 patent. They withdrew that complaint. If UTC believes what they stand here and say today, that the 793 patent is still valid, is still enforceable, still can be sued upon, then there would have been no reason why they would have dismissed their second Hatch-Waxman case against us on the 793, X, Y, or otherwise. Do you contend that we need to find that issue preclusion applies in order to affirm the district court? No, I think you can find, you can affirm based on the equities. We believe that the district court's issue preclusion was correct. All the cases that UTC cites. Would there have to be a different kind of analysis provided by the district court? Or could we do that on our own? Which issue? On the equity issue? Yes. Your friend, I think, suggested at one point, not agreeing with that, but that a remand might be necessary. We disagree. We disagree because the district court's opinion addresses the invalidity of the 793 patent. Independent of, there's two paragraphs. Paragraph on appendix page 4, under the argument section or the analysis section, the first paragraph deals with X, Y, and issue preclusion. The next paragraph, which spans pages 4 and 5 of the appendix, address the invalidity. And under that, that's the equitable issue. And so we don't think there's any other remand for further determination or fact finding to be had. There are no other facts to be had. Any other questions, Your Honor? Thank you. Thank you. So could you just spend 30 seconds or whatever? Do you agree with the mootness points that were made early on in your friend's discussion, that this would be moot? I agree with some of the concerns that you expressed, Judge Gross, not with the way in which my learned friend addressed them. So if the Supreme Court denies cert and the PTO cancels this patent a week later, are you not going to dismiss this appeal? Oh, I think at that point, with a canceled patent, I agree. I think that at that point, we're moot. No, no, no. That's not the question I asked. The question I asked is, are you going to come in and dismiss it? We will dismiss the appeal. We would dismiss the appeal in that circumstance. Having said that, though, And like we said, we know that you have another period until May of 25, and that nothing's going to happen in district court in DC until at least December. I'd say we have, yes. There's a big window there for the Patent Office to cancel this. There isn't. Who knows? They're a big government agency. Whether they're going to cancel immediately, I assume he's going to call whoever he knows there and say, cancel this. I'd imagine he called many people he knows there, but yes. And I think this is, however, just because something's a ministerial act doesn't mean it's de minimis. That has rights. Well, I understand that. That's the merits of your argument. Exactly. But there are, you acknowledge, there are Supreme Court cases that very much give a lot of oomph to the authority of the district court and to exercise equitable discretion. I agree with that, Judge Proust, but I can't. So wouldn't this fall into the same bucket as Starbucks, and I can't remember that other case in the Supreme Court, but even when the Congress said shall, it could still be trumped by a district court's discretion. Do you agree with that? I agree that there are circumstances where that's appropriate. I think those issues, those cases, didn't involve a situation where in order to do equity, the court would have to run ramshod over the two statutes, 318B and 21 U.S.C. 355, as well as black-letter jurisprudence from this court, namely XY and Fresenius and so forth. I mean, this is doing equity, and moreover, there is no, even if we're thinking that equity could trump the shall, which, you know, okay, Judge Andrews did none of that equitable analysis. So at the very minimum, we ought to have a remand here to allow Judge Andrews to actually do the equitable analysis that presumably exists here. So I just want to address a few things that came up in my colleague's argument. I will try not to take any more time than necessary. Packett itself went ahead at 1386 and clarified that XY was talking about unpatentability in connection with IPR decisions. IPR decisions under Section 318B are all about unpatentability, not about invalidity, and I found it telling that... Why is that? What is the consequence of that distinction for what we're deciding here? Well, because... Other than there's a cancellation provision. Well, because unpatentability is absolutely different from validity for purposes of issue preclusion and for purposes of finality here. The district court's decision was absolutely final, and it found not invalid, and that's what trumps here. That's a sacrosanct decision by the district court. The E4A order was in place. The judgment was executed. And so that is final, and to disrupt that based upon a lower standard unpatentability finding, the issues aren't even the same here. This is blonder tongue. So I think it does matter, Your Honor, very much. But that issue is taken care of. If they had issued the cancellation, it would be trumped, and there's no dispute about that. So there's nothing to be said about the different standards and substantial... We're all on the same page. I hope so. I thought I heard my colleagues stand here and tell this court it's moot today, and it is absolutely not. There is nothing to... I hope that we're all on the same page, Your Honor, with respect to the cancellation is the key here. No, no, no, not on the respect to the cancellation, but on the extent to which the difference between unpatentability and invalidity, bottom line is your view is one requires a cancellation. There's nothing different substantively or organically about the fact that there are different proceedings and different standards of proof. Well, post-cancellation, that's where you have a collapse, right? That's where you have the exhaustion.  Post-cancellation, yes. In that case, absolutely yes. What I saw in the papers, though, and what I heard from my learned friend was when Judge Cunningham pressed him saying, you seem to be playing these a little fast and loose. He said, oh, no, no, no, I'm absolutely not. He absolutely was. Unpatentability and invalidity are two very different things under very different statutory regimes. That's my point, Judge. With respect to APPX 4 through 5, I would encourage the court to take a look at that. This is the district court's Rule 60B order. I think you'll find that there was absolutely no assessment of the equities here. It was ministerial in the sense that Judge Andrews saw invalidity and said that's enough and off we go to the races. And that's just not the right analysis. It's an error of law entitled the de novo review. I would request that the court reverse or at least remand to allow Judge Andrews, if the court believes that he has the equitable authority to modify this injunction, to do the correct analysis. Thank you. Thank you all very much. The case is submitted. That concludes our proceeding.